# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UL LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>FLY-E GROUP, INC., a Delaware corporation, FLY E-BIKE, INC., a Delaware corporation, FLYBWY, INC., a New York corporation, FLYCYCLE, a New York corporation, ZHOU OU a/k/a "ANDY", an individual, RUI FENG a/k/a "RICKY", an individual, and RUIFENG GUO a/k/a "STEVEN", an individual, JOHN DOES 1-10, individuals, and ABC CORPORATIONS 1-10, entities,<br><br><br>    Defendants. | CASE NO.<br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff UL LLC ("UL" or "Plaintiff") by and through its undersigned attorneys, hereby files its Complaint against Defendants Fly-E Group, Inc. ("Fly-E Group"), Fly E-Bike, Inc. ("Fly E-Bike"), FlyBwy, Inc., ("FlyBwy"), FlyCycle, Inc., ("FlyCycle), Zhou "Andy" Ou, Rui "Ricky" Feng, Ruifeng "Steven" Guo, John Does 1-10, and ABC Corporations 1-10 (collectively "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.      This is an action for (i) counterfeiting and trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1116(d); (ii) the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (iii) unfair competition in violation of New York common law; (iv) unjust enrichment; and (v) deceptive trade practices in violation of the New York Deceptive

1

Trade Practices Act N.Y. GBL § 349, arising from Defendants' intentional and willful infringement of UL's well-known certification and service marks, which UL has used continuously since at least 1906 in connection with providing product testing and certification services. Defendants' willful infringement through its unauthorized use of UL's certification marks and service mark in association with Defendants' electric bikes ("e-bikes"), electric scooters ("e-scooters"), and electric motorcycles ("e-motorcycles") causes a likelihood of confusion in the marketplace, and has caused immediate and irreparable harm to UL, UL's certification and service marks, and to consumers. UL seeks, among other things, damages and an injunction prohibiting Defendants from their infringing use of any "UL" designation.

## THE PARTIES

2.      UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062. UL is an affiliate of the UL family of companies, which have tested, inspected, and certified products, and developed safety standards for over a century. Some of the services offered by UL include inspection services, advisory services, education and training, testing, auditing and analytics, certification software solutions, and marketing claim verification. Plaintiff UL owns the well-known UL-in-a-circle certification mark, the UL service mark, and variations thereof (the "UL Marks").

3.      Upon information and belief, Fly E-Bike, Inc. is a Delaware corporation, with a principal place of business at 136-40 39th Avenue, Flushing, New York 11354 ("Fly E-Bike"), and is in the business of manufacturing and selling electric bikes (e-bikes), electric scooters (e-scooters), and electric motorcycles (e-motorcycles). Upon information and belief, Fly E-Bike distributes and sells its products throughout the United States through its physical retail stores in New York, New Jersey, Florida, and California, as well as its online store at <www.flyebike.com>.

4.      Upon information and belief, Fly-E Group, Inc., is a Delaware corporation, also with a principal place of business at 136-40 39th Avenue, Flushing, New York 11354, listed on the NASDAQ stock exchange under ticker symbol FLYE, and is the parent company of Fly E-Bike. Upon information and belief, Fly-E Group engages in the designing, installing, and selling of smart electric motorcycles (e-motorcycles), electric bikes (e-bikes), electric scooters (e-scooters), and related accessories under the "Fly E-Bike" brand. Upon information and belief, Fly-E Group distributes and sells its products throughout the United States through its physical retail stores in New York, New Jersey, Florida, and California, as well as its online store at <www.flyebike.com>.

5.      Fly-E Group and Fly E-Bike are collectively referred to herein as the "Fly E-Bike Entities." The Fly E-Bike Entities operate at the same place of business at 136-40 39th Avenue, Flushing, New York 11354 and purport to operate the same website hosted at <www.flyebike.com>. Upon information and belief, the Fly E-Bike Entities share the same corporate officers, including Defendants Mr. Ou, Mr. Feng and Mr. Guo.

6.      Upon information and belief, Zhou "Andy" Ou is the Founder, Chairman of the Board and Chief Executive Officer of the Fly E-Bike Entities and is a resident of the State of New York. Upon information and belief, Mr. Ou founded the Fly E-Bike Entities in 2018 and is responsible for operating the Fly E-Bike Entities and relationships with investors and potential investors.

7.      Upon information and belief, Rui "Ricky" Feng is the Chief Operating Officer of the Fly E-Bike Entities and is a resident of the State of New York. Upon information and belief, Mr. Feng joined the Fly E-Bike Entities in 2018 and is responsible for overseeing the Fly E-Bike Entities' supply chain, implementing effective customer strategies, and ensuring legal compliance.

8.      Upon information and belief, Ruifeng "Steven" Guo is the Chief Financial Officer

of the Fly-E Bike Entities and is a resident of the State of New York. Upon information and belief, Mr. Guo has been serving as the Chief Financial Officer since 2022.

9.    Upon information and belief Mr. Ou, Mr. Feng and Mr. Guo have personally directed and controlled the trademark infringement and counterfeiting alleged herein.

10.    Upon information and belief, FlyBwy, Inc., is a New York Corporation with a principal place of business at 136-40 39th Avenue, Flushing, New York 11354 ("FlyBwy"), which is the same principal place of business as the Fly E-Bike Entities. FlyBwy is owned by Defendant Mr. Ou and operates retail stores in New York, New York. Upon information and belief, FlyBwy's retail stores offer for sale and sell the Fly-E Bike Entities' e-mobility devices and has falsely advertised its products as having been certified by UL, including by posting advertisements bearing counterfeit UL marks in its retail store.

11.    Upon information and belief, FlyCycle, Inc., is a New York Corporation with a principal place of business at 170-30 Jamaica Ave, Jamaica, New York. Upon information and belief, FlyCycle is owned by Defendant Mr. Feng and operates a retail store at 170-30 Jamaica Ave, Jamaica, New York. Upon information and belief, FlyCycle's retail store offers for sale and sells the Fly-E Bike Entities' e-mobility devices and has falsely advertised its products as having been certified by UL, including by posting advertisements bearing counterfeit UL marks in it retail store.

12.    Upon information and belief, John Does 1-10 are individuals, employees, and/or agents of the Fly E-Bike Entities, Mr. Ou, Mr. Feng, Mr. Guo, FlyBwy or FlyCycle, who have promoted, offered for sale, sold, and distributed the goods associated with the counterfeit UL certification marks and UL service mark addressed herein.

13.    Upon information and belief, ABC Corporations 1-10 are entities who are affiliates

of or associated with Fly E-Bike Entities, Mr. Ou, Mr. Feng, Mr. Guo, FlyBwy or FlyCycle, who have promoted, offered for sale, sold, and distributed the goods associated with the counterfeit UL certification marks and UL service mark addressed herein.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b) because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

15.    The Court has supplemental jurisdiction over the claims arising under the laws of the State of New York, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

16.    This Court has personal jurisdiction the over each of the Defendants because, *inter alia*, each Defendant (i) is a resident of, or does business in, the State of New York and this District; (ii) committed tortious actions within, and directed to, this State; (iii) purposefully directed improper and unlawful activity at this State by distributing, marketing, and/or selling counterfeit products in the State; and/or (iv) caused injury to Plaintiff in this State.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.    UL'S VALUABLE RIGHTS

18.    Founded in 1894, UL, including its affiliates and predecessors, is one of the oldest certification companies in the United States. UL has tested, inspected, and certified products to

regional, national, and international safety standards for over a century.

19.     UL engineers have contributed to the development of more than 1,000 famous "UL Standards for Safety" as well as international and regional standards, sitting on more than 1,300 standards panels and technical committees.

20.     UL's services include advising on regulatory compliance matters, certifying that representative samples of products satisfy applicable safety standards, and providing follow-up testing and inspection services to confirm that manufacturers comply with those standards.

21.     UL is a global independent safety science company offering certification, validation, testing, inspection, advising, training, and auditing services for a variety of industries around the globe.

22.     UL owns the well-known UL-in-a-circle certification mark ⓊⓁ and variations thereof (the "UL Certification Marks"). UL also owns the service mark UL (the "UL Service Mark").

23.     UL has been providing testing reports and certifying products that conform to applicable safety standards since at least 1906. Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Service Mark in interstate commerce.

24.     UL has been testing products and authorizing use of the well-known UL Certification Marks on products that conform to applicable safety standards in interstate commerce in the United States since at least 1937. UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

25.     UL serves all members of the general public, including, but not limited to, consumers, manufacturers, suppliers, retailers, vendors, trade groups, industry associations, regulatory bodies, and governmental entities.

26.     UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

27.     Over the past century, UL has promoted recognition of its certification programs through a wide variety of marketing channels on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and its interactive website located at <ul.com>. UL also promotes its UL Certification Marks and the UL Service Mark through its participation in standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research.

28.     As a result of UL's extensive use of the UL Service Mark to promote its certification programs, including standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research, the UL Service Mark and the UL Certification Marks have attained a national and global reputation for technical expertise and integrity and have become symbols of trust and objectivity.

29.     The UL Service Mark and the UL Certification Marks are well-known and recognized by the general public, as well as by members of local, state and federal government regulatory bodies and industry trade associations, as marks indicating testing, inspection, validation, certification, training, advising, and auditing services originating with UL.

30.     The UL Service Mark and the UL Certification Marks are renowned among the

general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Defendant began engaging in the conduct alleged in this Complaint.

31.    UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register. UL owns the following federally registered marks, among others. Copies of these registrations, or their corresponding USPTO website pages, are attached as Exhibits 1 through 4.

| Mark | Reg. No. | Ex. | Type |
|------|----------|-----|------|
| (UL) | 782,589 | 1 | Certification Mark |
| (UL) | 2,391,140 | 2 | Certification Mark |
| (UL CERTIFIED) | 4,283,960 | 3 | Certification Mark |
| UL | 4,201,014 | 4 | Service Mark |

32.    The federal trademark registrations referenced above are valid and subsisting, and provide conclusive evidence of the right of UL to use the UL Service Mark and authorize the use of the UL Certification Marks in commerce.

33.    UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (Exhibits 1-3), and offers educational, business advisory, product safety testing, and public safety services (the "UL Services") under the UL Service Mark (Exhibit 4).

34.    Use and registration of the UL Certification Marks and the UL Service Mark

establish that UL has senior trademark rights in the UL Certification Marks and the UL Service Mark, and consequently there is no question of priority of rights, as such priority belongs to UL.

35.    UL's United States Trademark Registration Nos. 2391140, 782589, and 4283960 referenced above are incontestable under 15 U.S.C. § 1115(b). As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks throughout the United States in connection with the UL Certification Services.

36.    UL has extensively used the UL Service Mark and has advertised, promoted, and offered the UL Services under the UL Service Mark in interstate commerce through various channels of trade. As a result, the customers and potential customers of UL, and the public in general, have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services. UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

## C. DEFENDANTS' WRONGFUL CONDUCT

37.    Electric mobility devices such as e-bikes, e-scooters, and e-motorcycles have become increasingly popular as a sustainable commuting alternative. In order to meet consumer demand, unscrupulous manufacturers rushed these products to production without sufficient attention to key safety details.

38.    Starting in or around 2020, there were numerous reports of e-bikes self-combusting and catching on fire.[1] E-bikes that were exploding and setting on fire became a significant safety

---

[1] See, e.g., https://www.msn.com/en-us/news/us/third-time-s-the-harm-e-bike-sparks-third-fire-in-as-many-years-at-nypd-s-red-hook-auto-pound/ar-AA1y7GzR?ocid=BingNewsSerp (Exhibit 5); https://abcnews.go.com/Technology/bike-batteries-raise-safety-concerns-amid-rise-fires/story?id=95617246 (Exhibit 6); https://apnews.com/article/lithium-ion-batteries-ebikes-fire-new-york-c8b403a95d74f034ea46b64edd7774db (Exhibit 7).

concern, because they were not only causing injury to users, but they were also causing severe damage to buildings and other property. For instance, in New York City alone, fires caused by lithium-ion batteries powering these electric mobility devices were responsible for 208 fires in 2022, resulting in 142 injuries and six deaths, according to the New York Fire Department. (*See* Exhibit 6.)

39.    UL released safety standard UL 2272 to specifically evaluate the electrical systems for personal e-mobility devices for electrical and fire hazards. (Exhibit 8, Micromobility Device Safety Testing and Certification.)

40.    UL released safety standard UL 2849 to specifically evaluate the electrical systems for e-bikes for electrical and fire hazards. (Exhibit 8, Micromobility Device Safety Testing and Certification,  at  https://www.ul.com/industries/automotive-and-mobility/micromobility-device-evaluation-testing-and-certification.) UL issued its first certification of e-bikes under Standard 2849 in 2020

41.    UL released safety standard UL 2850 to specifically evaluate the electrical systems for e-scooters and e-motorcycles for electrical and fire hazards. (Exhibit 9, UL LLC Outline of Investigation for Electric Scooters and Motorcycles.) UL updated UL Standard 2850 in May 2024. UL has not yet certified any e-motorcycles to UL Standard 2850.

42.    On December 20, 2022, the Consumer Product Safety Commission (CPSC) urged over 2,000 manufacturers, importers, distributors, and retailers of electric mobility devices to sell products that were compliant with UL safety standards UL 2849 and 2272. (*See* Exhibit 9.)

43.    On March 3, 2023, the New York City Counsel passed Initiative 663 mandating e-mobility devices to be certified by a third-party certification company to UL Standard 2849 and UL Standard 2272 where applicable. (*See* Exhibit 9; *see also* Exhibit 10, https://ulse.org/news/ul-

enterprise-applauds-new-york-city-mayor-eric-adams-signing-life-saving-micromobility.)

44.     Over the last few years, UL has issued certifications to several manufacturers of e-mobility device manufacturers. Unfortunately, there are a number of counterfeiters, such as Defendants, who insist on claiming their products are certified by UL when, in fact, they are not UL customers and have never asked UL to test or certify their products.

45.     On information and belief, because the highly publicized safety issues related to e-bikes, e-scooters, and e-motorcycles, and the New York City ordinances, many unscrupulous manufacturers and retailers responded to this negative press by falsely claiming that their e-mobility devices, were "UL Certified."

46.     Defendants are among those retailers that began advertising its products as "UL Certified" without actually having UL certification.

47.     Defendants have been using marks that are identical to or substantially indistinguishable from the UL Certification Marks and the UL Service Mark (here, the "Counterfeit Marks") to falsely suggest that their goods are certified by UL. Specifically, Defendants are using the Counterfeit Marks in association with the offering for sale and sale of several different models of e-bikes, e-scooters, and e-motorcycles (the "Infringing Products"). The Infringing Products are offered for sale by Defendants nationwide through distributors and retailers and at the Fly E-Bike Entities' website via online ordering, and at the Fly E-Bike Entities' brick-and-mortar stores, including the retail stores operated by Defendants FlyBwy and FlyCycle. Representative samples of Defendants' unauthorized use of the Counterfeit Marks are shown below and attached as Exhibit 11, Exhibit 12, and Exhibit 13, respectively:













48.     Each of the product images and advertising materials shown above bear a counterfeit imitation of the UL Certification Marks and UL Service Mark representing to customers that Defendants' products are certified by UL. But Defendants are not UL customers, and UL has never authorized Defendants to use the UL Certification Marks or the UL Service Mark in connection with e-bikes, e-scooters, and/or e-motorcycles, or related products.

49.     Defendants' use of the Counterfeit Marks is identical to and confusingly similar to the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression.

50.     Defendants' use of the Counterfeit Marks falsely suggests that the Defendants' goods have been authorized or certified by UL.

51.     Defendants' use of the Counterfeit Marks trades off the goodwill of the UL Service Mark and UL Certification Marks and is without permission or license from UL.

52.     Defendants advertise and sell their goods in commerce using the Counterfeit Marks.

53.     Defendants' goods associated with the Counterfeit Marks have not been certified by UL, and as such, may place the health and safety of the user at risk.

54.     Defendants' infringement has at all times been knowing and willful. Defendants were on constructive notice of the UL Certification Marks and the UL Service Mark by virtue of their federal registrations for those marks.

55.     Defendants deliberately placed the Counterfeit Marks on the Fly E-Bike Entities' website, social media accounts, investor materials, press releases, and in its brick-and-mortar stores to falsely represent that their products were UL certified. Defendants are aware that they have never asked UL for permission to use any of the UL Marks. Defendants are aware that UL has never authorized Defendants to make any use of the UL Marks. Defendant nevertheless used the UL Marks in association with the advertising and offering for sale of their e-bikes, e-scooters, and e-motorcycles.

56.     On July 20, 2023, UL sent an email to the Fly-E Bike Entities and Mr. Ou informing them of the unauthorized use of the UL Marks on the Fly E-Bike Entities' website and Instagram account. In response, an employee of the Fly E-Bike Entities and subordinate of Mr. Ou, Mr. Feng and Mr. Guo, Monica Xu, responded to UL's email agreeing to remove the Counterfeit Marks from the Fly E-Bike Entities' website, social media platforms, and retail stores "in one week." A copy of that email correspondence is attached as Exhibit 14. Upon information and belief, Ms. Xu

made Mr. Ou, Mr. Feng and/or Mr. Guo aware of her correspondence with UL.

57.     Despite Fly E-Bike's promise, between September 2023, and December 2023, UL discovered additional signage at Defendants' retail stores in New York City and Forest Hills, New York, including FlyBwy's retail store located on 4130 Broadway, making the same unauthorized use of the Counterfeit Marks, as shown below, and attached as Exhibit 15:

 

58.     On September 19, 2023, UL sent another email to Monica Xu again requesting that Defendants correct their advertisements. On September 20, 2023, Monica Xu responded again promising that the false advertisement would be removed and referring to her "boss." A copy of that email correspondence is attached as Exhibit 16. On information and belief, Monica Xu's "boss," who was aware of this correspondence, was Mr. Ou, Mr. Feng and/or Mr. Guo.

59.     Defendants again did not follow through with this promise, and instead Defendants continued to falsely advertise on the Fly E-Bike Entities' website, social media accounts and retail stores that their e-bikes, e-scooters, and e-motorcycles are certified by UL. In fact, Defendants *increased* their usage of the Counterfeit Marks. For instance, as of January 2025, Defendants were using at least 29 Counterfeit Marks with at least 18 separate products on its website, as shown below, and as Exhibit 11:







60.     Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng have control over all content on the Fly E-Bike Entities' website and social media accounts.

61.    Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng personally controlled the placement of the Counterfeit Marks on the Fly E-Bike Entities' website at <flyebike.com> and social media accounts.

62.    Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng created a presentation for investors and potential investors dated April 2024. A copy of that investor report, which is publicly available on the Fly-Bike Entities' website is attached as Exhibit 17 (the "Investor Report").

63.    The Investor Report falsely states that the Fly E-Bike Entities "[p]rovide UL certificates for both e-bike models and batteries," and "[b]y incorporating a secure charging and discharging protocol, with UL safety certification…." (Exhibit 17.) The Investor Report also includes images of purported certificates from UL, which each bear a UL Mark.

64.    Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng controlled and directed the inclusion of Counterfeit Marks on the Investor Report.

65.    Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng have direction and control over the content in all press releases published by the Fly E-Bike Entities, including the press release issued on August 9, 2024 stating that "[a]ll of our lineup of e-bikes feature UL-certified lithium batteries for safety" (the "Press Release"). (Exhibit 18.)

66.    Upon information and belief, Defendants Mr. Ou, Mr. Guo and Mr. Feng controlled and directed the inclusion of a Counterfeit Mark in the Press Release.

67.    Upon information and belief, as the owner and/or director of FlyBwy, Mr. Ou directed the placement of an advertisement bearing the Counterfeit Mark in the retail store operated by FlyBwy at 4130 Broadway, New York, New York.

68.    Upon information and belief, as the owner and/or director of FlyCycle, Mr. Feng

directed the placement of an advertisement bearing the Counterfeit Mark in the retail store operated by FlyCycle at 170-30 Jamaica Ave, Jamaica, New York.

69.    Upon information and belief, Defendants knew or had reason to know of the UL Certification Marks and the UL Service Mark at the time Defendants commenced use of the Counterfeit Marks.

70.    Upon information and belief, Defendants intentionally adopted the use of the Counterfeit Marks so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and UL Service Mark.

71.    UL has suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer irreparable harm to UL's brand value, reputation, and goodwill, for which UL has no adequate legal remedy.

72.    For example, several individuals have filed lawsuits against the Fly-E Bike Entities and/or their affiliates alleging that the Fly-E Bike Entities' e-bike and e-scooter products have caught on fire, causing property damage and personal injury. In one case pending in New Jersey Superior Court, the plaintiff alleges that the Fly-E Bike Entities' e-bike, including the battery pack and charger, malfunctioned, resulting in a fire which caused severe and significant property damage to the plaintiff's premises.[2] In another case pending in New York Supreme Court, the plaintiffs alleged that the Fly E-Bike Entities' products caused a massive fire at 1720 Watson Avenue, Bronx New York,[3] which not only destroyed the premises, but also injured twelve civilians, including one child, and two firefighters.[4]

---

[2] Exhibit 19, Complaint, *141 Main Street Paterson, LLC by their subrogee State Farm Fire And Casualty Company v. Fly E-Bike Company, et al*. (NJ Superior Court, Passaic County) (PAS-L-002765-23).
[3] Exhibit 20, *Evelyn Morales, et al. v. Fly E-Bike, Inc., et al*. (NY Supreme Court, Bronx County) (816375/2021E & 813601/2022E).
[4] Exhibit 21, https://www.cbsnews.com/newyork/news/bronx-apartment-fire-electric-scooter-battery/.

73.     As a result of these fires, consumers may falsely believe the products causing property damage and injury were certified by UL, to UL's detriment.  In particular, consumers dissatisfied with Defendants' e-mobility devices because of quality and safety do not know they have been deceived. They are likely to associate their dissatisfaction with UL and lose trust in the UL certification process, UL Certification Marks and UL Service Mark.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. §§ 1114(1), 1116(d))**

74.     UL repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75.     The UL Certification Marks and UL Service Mark are fanciful and arbitrary and are associated in the minds of the public and consumers with UL.

76.     Defendants' Counterfeit Marks are identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause (i) confusion, mistake, and deception as to the certification of Defendants' e-bikes, e-scooters, and e-motorcycles, (ii) the public to be confused, deceived, and to assume erroneously that Defendants' e-bikes, e-scooters, and e-motorcycles have been certified by UL or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and (iii) irreparable injury and damage to UL and to the goodwill and reputation symbolized by the UL Certification Marks and the UL Service Mark.

77.     Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

78.     Likelihood of confusion is also enhanced by the fact that the Counterfeit Marks, the UL Certification Marks and the UL Service Mark prominently incorporate the key component

"UL."

79.     Defendants' use of the Counterfeit Marks without UL's authorization or consent is a willful and intentional infringement of the UL Certification Marks and the UL Service Mark.

80.     Defendants' conduct intended to exploit UL's goodwill and reputation associated with the UL Certification Marks and the UL Service Mark. Consumers are likely to purchase or engage Defendants' e-bikes, e-scooters, and e-motorcycles being offered under the Counterfeit Marks, believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

81.     UL has no control over the quality of Defendants' e-bikes, e-scooters, and e-motorcycles manufactured and sold by Defendants. Defendants have recklessly placed e-bikes, e-scooters, and e-motorcycles into the marketplace which purport to have been tested by UL under appropriate safety standards, when in fact UL never performed any such testing on the e-bikes, e-scooters, and e-motorcycles Defendants are selling.

82.     UL is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit Mark.

83.     Unless Defendants are enjoined by this Court from so doing, UL will continue to suffer irreparable harm and injury to its goodwill and reputation.

84.     UL has no adequate remedy at law.

85.     As a result of Defendants' actions, UL has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## COUNT II

**UNFAIR COMPETITION AND FALSE DESIGNATIONS OF
ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS
(15 U.S.C. §1125(a))**

86.     UL repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

87.     Defendants' use of the Counterfeit Mark constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' e-bikes, e-scooters, and e-motorcycles offered for sale under Defendants' Counterfeit Marks have been certified by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.     Upon information and belief, Defendants intentionally adopted and used the Counterfeit Marks to create consumer and confusion and traffic off of UL's reputation and goodwill associated with the UL Certification Marks and the UL Service Mark.

89.     UL has no control over the nature and quality of Defendants' e-bikes, e-scooters, and e-motorcycles offered for sale and advertised in association with Counterfeit Marks. Thus, the value of the UL Certification Marks and the UL Service Mark is subject to damage by entities and individuals it cannot control. Unless enjoined by this Court from so doing, Defendants will continue to engage in acts of unfair competition, false representation and designation, to the irreparable damage and injury of UL.

90.     Defendants' actions cause or are likely to cause confusion or mistake among the public as to the testing and certification of Defendants' e-bikes, e-scooters, and e-motorcycles offered for sale bearing Defendants' Counterfeit Marks, or to confuse the public into believing that Defendants' e-bikes, e-scooters, and e-motorcycles are otherwise affiliated, connected, associated with, or sponsored by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     UL is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from its infringement of the UL Certification Marks and the UL Service Mark.

92.     The goodwill of UL's business under the UL Certification Marks and the UL Service Mark is of great value, and UL will suffer irreparable harm to its trade reputation and goodwill, should Defendants' acts of unfair competition and false representation and designations be allowed to continue.

93.     UL has no adequate remedy at law.

94.     As a result of Defendants' actions, UL has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

95.     UL repeats and realleges paragraphs 1 through 73 as if set forth herein.

96.     Defendant has unfairly and intentionally used the UL Certification Marks and the UL Service Mark to misrepresent its e-bikes, e-scooters, and e-motorcycles as having been tested and/or certified by UL.

97.     Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, UL's reputation and goodwill in the UL Certification Marks and the UL Service Mark.

98.     Defendants have derived, and continues to derive, unfair and illicit profits by trading off of the reputation and goodwill of the UL Certification Marks and the UL Service Mark.

99.     The acts described in Paragraphs 1 through 65 above, constitute unfair competition under this State's common law.

100.    Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to UL.

101.    UL has no adequate remedy at law.

102.    Defendants' conduct was oppressive, fraudulent, and malicious, entitling UL to an award of punitive damages. Indeed, as noted above, Defendant continue to sell products bearing the Counterfeit Marks even after UL sent Defendant multiple correspondences which clearly put Defendant on notice that they were selling counterfeit products.

## COUNT IV

## COMMON LAW UNJUST ENRICHMENT

103.    UL repeats and realleges paragraphs 1 through 73 as if set forth herein.

104.    UL has invested substantial time, resources, and money developing, growing, and promoting the UL Certification Marks and the UL Service Mark and the respective goodwill and reputation associated therewith.

105.    Defendants have unfairly and intentionally used the UL Certification Marks and the UL Service Mark to misrepresent its e-bikes, e-scooters, and e-motorcycles having been tested and/or certified by UL.

106.    Defendants have engaged in such unfair and improper conduct in order to trade off of, and benefit from, the UL's reputation and goodwill in the UL Certification Marks and the UL Service Mark.

107.    Defendants have derived, and continue to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the UL Certification Marks and the UL Service Mark.

108.    By being able to trade off of, and profit from, the UL Certification Marks and the UL Service Mark and the respective goodwill and reputation associated therewith, Defendants have been unjustly enriched.

109.    It would be unjust for Defendants to be permitted to retain the illicit profits it earned through its sale of products bearing the Counterfeit Marks.

110.    The acts described in Paragraphs 1 through 53 above, constitute unjust enrichment under this State's common law.

111.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to UL.

112.    UL have no adequate remedy at law.

<u>**COUNT V**</u>

**UNLAWFUL DECEPTIVE ACTS AND PRACTICES**
**(NY Gen Bus L § 349)**

113.    UL repeats and realleges paragraphs 1 through 73 as if set forth herein.

114.    Defendants' improper and unlawful use of the UL Certification Marks and the UL Service Mark constitutes a deceptive trade practice in violation of New York's Deceptive Acts and Practices, NY Gen Bus L § 349. insofar as it:

    (a)    passes off the Defendants' products as having been tested and/or certified by UL;

    (b)    causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendants' products;

    (c)    causes a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with or certification by UL;   and

    (d)    represents that Defendants' products have sponsorship or approval that they do not have.

115.    Defendants' acts constitute deceptive business practices because they are acts in trade and commerce that use and employ practices set out in Section 2 of the Uniform Deceptive

Trade Practices Act, NY Gen Bus L § 3492, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material fact.

116.    Defendants have willfully engaged in the deceptive trade practices. This is evidenced by, among other things, Defendants continuing its unlawful conduct even after receiving multiple correspondences from UL informing Defendants that it was offering for sale products associated with counterfeit marks and demanding that it cease such conduct.

117.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to UL's goodwill, and reputation.

118.    UL has no adequate remedy at law.

119.    Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure UL, including dilution of goodwill, injury to their respective reputations, and diminution in the value of their respective trademarks.

120.    Defendants have realized revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

121.    UL has also been injured by having to incur, and continuing to incur, attorneys' fees and other fees, costs, and expenses, uncovering and seeking to enjoin Defendant's improper actions.

122.    UL has no remedy at law for Defendants' wrongful actions.

## **PRAYER FOR RELIEF**

WHEREFORE, UL respectfully prays the Court:

A.    Enter a judgment in favor of UL and against Defendants on all Counts alleged herein;

B.    Designate this action an exceptional case entitling UL to an award of its reasonable

attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

      C.     Issue permanent injunctive relief against Defendants and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

      (i)     imitating, copying, or making any other infringing use of the UL Service Mark and the UL Certification Marks by the Defendants' Counterfeit Marks, and any other mark now or hereafter confusingly similar to the UL Service Mark or the UL Certification Marks;

      (ii)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Service Mark, the UL Certification Marks, Defendants' Counterfeit Marks, or any mark confusingly similar thereto;

      (iii)     using any false designation of origin or false description or statement that can or is likely to erroneously lead the trade or public or individuals to believe that any good has been provided, produced, distributed, offered for distribution, circulated, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

      (iv)     using the names, logos, or other variations thereof of the UL Service Mark, the UL Certification Marks, or Defendants' Counterfeit Mark in any of Defendant's trade or corporate names;

      (v)     engaging in any other activity constituting an infringement of the UL Service Mark, the UL Certification Marks, or of the rights of UL in, or right to use or to exploit the UL Service Marks and the UL Certification Marks; and

      (vi)     assisting, aiding, or abetting any other person or business entity in engaging in or

performing any of the activities referred to in subparagraphs (i) through (v) above;

       D.    Order Defendants, at their own expense, and subject to review by UL, to recall all products and marketing, promotional, and advertising materials that bear or incorporate Defendant's Counterfeit Marks, or any mark confusingly similar to the UL Certification Marks or the UL Service Mark, which have been manufactured, distributed, sold, or shipped by Defendant or on its behalf, and to reimburse all customers from which said materials are recalled;

       E.    Order Defendants to immediately produce and turn over to UL's counsel, all products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the Defendant's Counterfeit Marks, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

       F.    Order Defendants to immediately supply UL with a complete list of entities to whom they distributed and/or sold products falsely bearing the UL Certification Marks and the UL Service Mark as well as complete information regarding the sourcing and manufacture of Defendant's e-bikes, e-scooters, and e-motorcycles bearing the Counterfeit Marks;

       G.    Order expedited discovery to commence immediately;

       H.    Order Defendants to publish notice to all customers or members of the trade who may have seen or heard of Defendants' use of Counterfeit Marks, as well as to the appropriate regulatory bodies, which notice shall disclaim any connection with UL and shall advise them of the Court's injunction order and of Defendant's discontinuance from all use of Defendants' Counterfeit Marks;

       I.    Order Defendants to file with this Court and to serve upon UL within thirty (30) days after service upon Defendant of an injunction in this action, a written report by Defendants,

under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

J.      Order Defendants to pay the costs of corrective advertising and any public, regulatory or other notices issued by UL;

K.      Order Defendants to hold in trust, as constructive trustees for the benefit of UL, its profits obtained from their provision of the Defendant's e-bikes, e-scooters, and e-motorcycles offered for sale under the Counterfeit Marks;

L.      Order Defendant to provide UL a full and complete accounting of all amounts due and owing to UL as a result of Defendants' illegal activities;

M.      Order Defendants to pay the general, special, actual, and statutory damages of UL as follows:

(i)      UL's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendant's willful violation of the federally registered trademarks of UL; and

(ii)      If UL so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

N.      Order Defendants to pay to UL both the costs of this action and reasonable attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

O.      Award UL its prejudgment interest; and

P.      Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

UL hereby demands a trial by jury of all triable issues raised by this Complaint.

DATED: March 12, 2025

GREENBERG TRAURIG, LLP

By: /s/ *Giancarlo Scaccia*

Giancarlo Scaccia
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801 6831
scacciag@gtlaw.com

Cameron M. Nelson (*pro hac vice forthcoming*)
Jacqueline Brousseau (*pro hac vice forthcoming*)
Molly J. Carr (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 456-1020
nelsonc@gtlaw.com
brousseauj@gtlaw.com
carrm@gtlaw.com

*Attorneys for Plaintiff UL LLC*